UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

KEITH DRAYTON,

                Petitioner,

        -against-                               **REPORT and RECOMMENDATION**

WILLIAM MAZZUCA,                     03 Civ. 4844 (PAC)(KNF)

                Respondent.
------------------------------------------------------------X

KEVIN NATHANIEL FOX,
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE PAUL A. CROTTY, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Keith Drayton ("Drayton") has made an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Drayton contends that his confinement by the state of New York is in contravention of his constitutional rights because the trial court instructed the jury to find Drayton and his co-defendant either guilty or not guilty of acting in concert to commit the charged crimes and, according to Drayton, since his co-defendant was found not guilty, Drayton was denied equal protection of the law. Drayton also contends that the differing verdicts reached by the jury concerning his guilt and that of his co-defendant, indicate that the petitioner's conviction was not based upon a finding of guilt beyond a reasonable doubt. In addition, Drayton alleges that his trial counsel rendered ineffective assistance to him by failing: (a) to bring to the trial court's attention relevant case law on the issue of repugnant verdicts; and (b) to register a protest concerning a repugnant verdict prior to the trial court's dismissal of the jury. Furthermore, Drayton alleges that insufficient evidence was presented at his trial, by the

prosecution, to establish his guilt beyond a reasonable doubt. Moreover, Drayton maintains that he was denied a fair trial because he was displayed before the jurors repeatedly, while he was in handcuffs.

The respondent opposes Drayton's application for a writ of habeas corpus. He contends that Drayton's claim concerning the repugnancy of the jury's verdict was: (i) not preserved for appellate review; and (ii) procedurally forfeited. The respondent also contends that the claim is barred from review in this court because it was resolved by the state appellate court on independent and adequate state-law grounds, and without resort to federal law. In addition, the respondent maintains that Drayton's ineffective assistance of counsel claim, as well as the claim that Drayton was displayed before the jury while in handcuffs, do not entitle Drayton to habeas corpus relief because the determinations reached by the state appellate court on the merits of those claims were neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

According to the respondent, Drayton's claim that the evidence presented at the trial was not sufficient to sustain a conviction was not submitted to the state appellate court for adjudication. However, the respondent contends that since Drayton is no longer able to raise that claim in a state court and obtain relief, the claim should be deemed exhausted by the court, but procedurally forfeited.

## II. BACKGROUND

On March 2, 1997, at approximately 10:00 p.m., Hillary Ottih ("Ottih") was attempting to enter the gate at his Bronx County home when two men approached him. One man, later identified as Drayton, was armed with a gun. Drayton pointed the gun at Ottih, took a chain from

around Ottih's neck and hit him on the face, while his accomplice removed a $100 bill from Ottih's hand. As the robbers fled from the scene, Ottih called to them, and they returned to the location where Ottih was standing. Drayton's accomplice retrieved a bottle from the top of a plastic garbage bag that was on the street, broke the bottle, swung it at Ottih and "threw a punch" at him. Ottih then ran across the street to a restaurant; the robbers pursued him. At the restaurant, the robbers demanded Ottih's watch and wallet, but he did not surrender those items to them. The robbers then proceeded to travel, on foot, along East 165th Street, in the direction of Nelson Avenue. Ottih exited the restaurant, used a telephone that was on the street to contact a 911 operator and reported the robbery. Ottih informed the operator that the robbers were black males, one wearing a dark leather jacket and the other wearing an army fatigue jacket.

Approximately five minutes after Ottih made that call, police officers arrived to assist him. Ottih entered their police vehicle, advised the officers of the direction in which the robbers had fled, and reported that one of the robbers wore a leather jacket and the other wore an army fatigue jacket. Approximately two minutes after Ottih entered the officers' vehicle, they arrived at Jerome Avenue and East 165th Street. There, Ottih saw the petitioner and his son, who were in the custody of other police officers. The petitioner was wearing a leather jacket and his son was wearing an army fatigue jacket. Ottih exited the police vehicle and approached Drayton and his son; he came to within 10 to 15 feet of them. Ottih advised the officers that the petitioner and his son were the two men who had robbed him.

At the time of their arrest, neither the petitioner nor his son possessed a gun or any of the property that was taken from Ottih. Police officers, with the assistance of a trained dog, searched

-3-

the vicinity in which Drayton and his son were apprehended. However, the officers were unable to find the weapon used by the robbers or the property taken from Ottih.

A Bronx County grand jury returned an indictment against Drayton and his son. The grand jury accused the petitioner of acting in concert with his co-defendant to commit robbery in the first degree (two counts), robbery in the second degree, criminal possession of stolen property in the fifth degree and criminal possession of a weapon in the fourth degree.

Drayton and his co-defendant proceeded to trial before a petit jury. Drayton, who unlike his co-defendant was in custody pending trial, recalls that, during the voir dire proceedings, he was escorted into the courtroom repeatedly, after the veniremembers were already assembled there, and while he was in handcuffs. Drayton maintains that when he protested, the trial court explained that the courtroom did not have a direct feeder from the holding facility. Therefore, if Drayton did not enter the courtroom after the prospective jurors did, they would see him in the hallway being escorted in handcuffs from a stairwell to the courtroom. To address the matter of Drayton being brought into the courtroom while handcuffed, the trial court informed Drayton's counsel that, during the voir dire proceedings, he could advise the veniremembers that Drayton was being held in custody because he could not satisfy the bail conditions. The trial court also informed Drayton's counsel that he could inquire of the veniremembers whether Drayton's being in custody would cause them to prejudge Drayton. According to Drayton, the court did not address the jury directly to instruct its members on the matter of Drayton appearing before them in handcuffs.

Drayton was convicted for robbery in the first degree and his son was acquitted of all charges made against him that the jury was directed to consider. Drayton's counsel moved for a

mistrial on the ground that the verdict was repugnant. The trial court did not rule on the motion immediately. It reserved decision and directed Drayton's counsel to submit legal authority to it in support of his application. Drayton's counsel failed to make the submission to the court as he was directed to do. Instead, at Drayton's sentencing proceeding, counsel renewed his motion orally. The application was denied. Thereafter, the trial court sentenced Drayton to a determinate sentence of 12 years incarceration.

Drayton appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, First Department. Drayton asked that court to upset his conviction because: (1) it was repugnant in light of the acquittal of his co-defendant; (2) it was against the weight of the trial evidence; (3) his trial counsel was under no obligation to raise the issue of repugnancy prior to the discharge of the jury, since the principles of double jeopardy barred the jury from reconsidering the charges made against his co-defendant; (4) his trial counsel rendered ineffective assistance to him by failing to provide the trial judge with legal authority to support the claim of repugnant verdicts and, furthermore, to the extent required by law, by failing to make the repugnancy claim prior to the discharge of the jury; and (5) he was denied a fair trial by being brought into the courtroom in handcuffs, after the jury had assembled there.

The Appellate Division rejected Drayton's arguments. That court found that the jury's verdict was not against the weight of the evidence and, thus, there was no basis to disturb the jury's determinations concerning identification and credibility. In addition, the Appellate Division determined that Drayton's claim, premised on repugnancy of the verdict, was unpreserved for appellate review. Therefore, the court declined to review it, in the exercise of its discretion, in the interest of justice. However, the Appellate Division noted that were it to review

the claim, it would find that the verdict convicting Drayton was not repugnant even though he was charged with acting in concert with his co-defendant, who was acquitted by the jury. The Appellate Division reviewed the trial court's instructions to the jury and found that: (1) the instructions made clear that the jury was to reach separate verdicts with respect to each defendant; and (2) the instructions never conveyed to the jury, as Drayton argued, that the petitioner's guilt was dependant on the guilt of his co-defendant. In addition, the Appellate Division indicated that its review of the record demonstrated that Drayton received meaningful representation from his trial counsel and, further, that the record did not support Drayton's claim that he was displayed repeatedly to the jury while in handcuffs. See People v. Drayton, 288 A.D.2d 132, 732 N.Y.S.2d 568 (App. Div. 1st Dept. 2001).

Thereafter, Drayton sought leave to appeal from the determination of the Appellate Division to the New York Court of Appeals. He asked that court to resolve what he characterized as "two novel and important legal issues regarding claims that a mixed verdict is repugnant." Specifically, Drayton asked the New York Court of Appeals to determine: (a) at what juncture in a trial proceeding a protest must be lodged to preserve for appellate review a claim that a verdict is repugnant, in a circumstance "where mixed verdicts between co-defendants" have been rendered by a jury; and (b) how a trial court's instructions to a jury should be analyzed to determine whether a "mixed verdict is repugnant." Drayton also asked the court to determine whether he received ineffective assistance from his trial counsel by virtue of counsel's failure to: (i) assert a claim of repugnancy prior to the discharge of the jury; or (ii) submit legal authority to the trial court, as he was directed to do, concerning repugnant verdicts among co-defendants. In addition, Drayton asked the court to consider whether he was denied a fair trial because he was

escorted into the courtroom in handcuffs, in full view of the jury. Drayton's application for leave to appeal to the New York Court of Appeals was denied. See People v. Drayton, 98 N.Y.2d 674, 746 N.Y.S.2d 463 (2002). The instant application for a writ of habeas corpus followed.

### III. DISCUSSION

*Repugnant Verdict*

The petitioner claims that the differing verdicts returned by the jury concerning his guilt and the guilt of his co-defendant, based on the evidence adduced at the trial, makes the verdicts repugnant. For his part, the respondent maintains that the claim is unexhausted, has been procedurally forfeited by the petitioner and, accordingly, Drayton may not obtain the habeas corpus relief he seeks based on this claim.

*Exhaustion*

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971). This requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731, 111 S. Ct. 2546, 2254 (1991).

To satisfy the exhaustion requirement, a habeas corpus petitioner must meet a two-pronged test. First, the petitioner must "fairly present" his or her federal claim to the highest state court from which a decision can be rendered. Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 190-91 n.3 (2d Cir. 1982)(*en banc*). A claim is "fairly presented" if the state courts are informed of "both the factual and the legal premises of the claim [asserted] in federal court." Id. at 191.

-7-

Second, "having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure state [appellate] review of the denial of that claim." Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981)(citations omitted).

A state defendant may alert a state court to the federal constitutional nature of his claim in a number of ways, including:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye, 696 F.2d at 194.

In this case, although Drayton presented his claim to the highest court in the state, he failed to do so in such a way as to implicate a federal constitutional issue. In his brief to the Appellate Division and in his application for leave to appeal to the New York Court of Appeals, Drayton did not make citation to pertinent federal cases, as required by the first Daye factor noted above. Instead, he relied upon state cases, none of which employed a federal constitutional analysis. Moreover, Drayton's reliance upon and emphasis on New York jurisprudence in asserting his claim cannot reasonably be construed as an attempt by him to couch the claim in terms so particular that anyone reviewing the claim would realize that a specific right protected by the Constitution was being asserted. In addition, Drayton did not allege "a pattern of facts that is well within the mainstream of constitutional litigation," as required by the fourth Daye factor. Consequently, the Court finds that Drayton did not put the state courts on notice that they were to

decide a federal constitutional claim. Therefore, this claim is unexhausted under the applicable standard.

*Procedural Default*

Even if a claim has not been exhausted fully, it will be deemed exhausted if it is clear that the state court would find it procedurally barred. See Harris v. Reed, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9; Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000). Under New York law, where sufficient facts appear in the trial record from which the movant could have presented the subject claim to the Appellate Division but failed to do so, a motion made later before the trial court to vacate the judgment of conviction must be denied. Therefore, the petitioner is now procedurally barred from seeking state review of the claim that he was denied equal protection of the law. See New York Criminal Procedure Law § 440.10(2)(c); Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994). Since Drayton can no longer present this claim in state court, the claim has been procedurally forfeited. Therefore, the claim may be deemed exhausted by the court for the purpose of habeas corpus review. See Harris, 489 U.S. at 263 n.9, 109 S. Ct. at 1043 n.9; Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). In such a circumstance, Drayton's claim, that he was denied equal protection of the law, may be entertained by the court if Drayton can show cause for his default and actual prejudice resulting therefrom, or that failure to consider the federal claim will result in a fundamental miscarriage of justice. See Harris, 489 U.S. at 262, 109 S. Ct. at 1043; DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004). In determining if cause is present for the procedural default, courts must be careful to limit their inquiry to external factors that inhibited the petitioner or the petitioner's counsel from asserting the claim. See Murray v. Carrier, 477 U.S. 478, 492, 106 S.

Ct. 2639, 2648 (1986). Such factors may include, <u>inter</u> <u>alia</u>, "interference by officials" that made compliance with the applicable state procedural rule impracticable or "a showing that the factual or legal basis for a claim was not reasonably available to counsel." <u>Murray</u>, 477 U.S. at 488, 106 S. Ct. at 2645. A "fundamental miscarriage of justice" has been described as an "extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Sawyer v. Whitley</u>, 505 U.S. 333, 338-39, 112 S. Ct. 2514, 2518-19 (1992); <u>Gonzalez v. Sullivan</u>, 934 F.2d 419, 422 (2d Cir. 1991).

In the case at bar, Drayton has not identified any cause for his failure to present a claim of denial of equal protection of the law to the state appellate courts. Nor has he demonstrated that he is actually innocent of the offense for which he was convicted. Accordingly, the claim is procedurally barred and, therefore, may not be reviewed by this court.

In light of the foregoing, Drayton's claim of denial of equal protection of the law cannot be the basis for habeas corpus relief.

*Ineffective Assistance of Counsel*

Drayton alleges that his trial counsel's failure to submit legal authority to the trial court on the issue of repugnancy of the verdict and his failure to lodge a protest respecting a repugnant verdict prior to the discharge of the jury constitute a violation of Drayton's Sixth Amendment right to the effective assistance of counsel. Drayton's Sixth Amendment claim was adjudicated on the merits by the Appellate Division. Where a state court has adjudicated the merits of a claim raised in a petitioner's federal habeas corpus petition, the Antiterrorism and Effective Death Penalty Act of 1996 requires that the writ be denied unless the state court's adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000); Francis S. v. Stone, 221 F.3d 100 (2d Cir. 2000). A state court's determination of factual issues is presumed correct. An applicant for habeas corpus relief bears the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Drayton has not identified how the Appellate Division's determination on his Sixth Amendment claim was contrary to or involved an unreasonable application of clearly established Federal law. Moreover, he has not shown how that court's decision on his appeal was grounded on an unreasonable determination of the facts in light of the evidence presented at his trial. Having failed to meet the burden imposed upon him by statute, see 28 U.S.C. § 2254(d), Drayton is not entitled to habeas corpus relief based on his claim that he received ineffective assistance from his trial counsel.

*Insufficient Evidence of Guilt*

Drayton contends that the evidence presented at his trial was insufficient to support his conviction for robbery in the first degree. However, this is a claim that was never presented by Drayton to the state courts for adjudication. Consequently, it is unexhausted. Drayton no longer has a vehicle through which this claim could be presented to the state courts for adjudication. As noted earlier in this writing, New York's procedural law would bar Drayton from mounting a collateral attack in an attempt to vacate the judgment of conviction based upon his claim that insufficient evidence was presented at his trial to secure a conviction, because the facts underly-

ing the claim appear in the record generated during the trial and, therefore, could have been among the matters Drayton asked the Appellate Division and the New York Court of Appeals to review. See New York Criminal Procedure Law § 440.10(2)(c). In a circumstance such as this, Drayton's procedurally forfeited claim may be deemed exhausted by the court for the purpose of habeas corpus review. See Harris, 489 U.S. at 263 n.9, 109 S. Ct. at 1043 n.9; Grey, 933 F.2d at 120. Therefore, the instant claim may be entertained by the court if Drayton can show cause for his default and actual prejudice resulting therefrom or that a failure to consider the federal claim will result in a fundamental miscarriage of justice. The Court has already discussed, supra, the concepts of cause and prejudice as they relate to an analysis of an unexhausted claim that is deemed exhausted for the purpose of habeas corpus review and will not repeat that discussion here. In like manner, the Court has already explained that a "fundamental miscarriage of justice," that is, a petitioner's actual innocence, may provide the basis for habeas corpus relief; consequently, that concept will not be revisited here. Suffice it to say that Drayton has not shown cause or prejudice for his default and has not demonstrated that he is actually innocent of the crime for which he was convicted. Therefore, he is not entitled to habeas corpus relief based upon his claim that insufficient evidence of his guilt was presented to the jury at his trial.

*Fair Trial*

Drayton claims that his constitutional right to a fair trial was denied to him because he was brought into the trial courtroom in handcuffs repeatedly, and his jury observed this. 28 U.S.C. § 2254(e)(1) provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Drayton presented his fair trial claim to the Appellate Division for adjudication. The Appellate Division determined that "[t]he record does not support [Drayton's] claim that he was repeatedly displayed to the jury in handcuffs." That factual determination is presumed to be correct, see 28 U.S.C. § 2254(e)(1), and Drayton has the burden of rebutting that presumption by clear and convincing evidence; this he has not done. Drayton has not offered any evidence to the Court that in any way rebuts the presumption of correctness that 28 U.S.C. § 2254 accords the Appellate Division's finding on Drayton's fair trial claim. Consequently, habeas corpus relief based on this claim is not warranted.

## IV. RECOMMENDATION

For the reasons set forth above, Drayton's application for a writ of habeas corpus should be denied.

## V. FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, United States District Judge, 40 Centre Street, Room 2102, New York, New York 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty.

FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Candair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1998); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
November 28, 2005

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Keith Drayton
Robert T. Johnson, Esq.